**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION**

UNITED STATES OF AMERICA,

    *Plaintiff*,   CASE NO. 10-CR-20505

v.   DISTRICT JUDGE THOMAS L. LUDINGTON
    MAGISTRATE JUDGE CHARLES E. BINDER

D1    CHAD B. GILBERT,
D2    THERESA L. GILBERT,

    *Defendants.*
_____/

**ORDER VACATING GUILTY PLEAS**
(Docs. 8 and 17)

**I.    INTRODUCTION**

Defendants Chad and Theresa Gilbert (hereafter "Defendants") were charged by Information on August 19, 2010. The Information states in pertinent part:

> . . . Chad B. Gilbert and Theresa L. Gilbert, aided and abetted each other, knowingly embezzled and converted to their own use, and without authority sold, conveyed and disposed of, money and things of value of the United States and the U.S. Department of Agriculture, in that, after Chad B. Gilbert and Theresa L. Gilbert gave the United States a security interest in collateral to obtain funds from the U.S. Department of Agriculture, Chad B. Gilbert sold the collateral without the consent of the U.S. Department of Agriculture, and Chad B. Gilbert and Theresa L. Gilbert used the proceeds of the sale for purposes other than to pay their indebtedness to the United States, thereby embezzling and converting the money and things of value of the United States to their own use, all in violation of 18 U.S.C. §§ 641 and 2.

(Doc. 1.) Defendants signed and filed consents to proceed before this magistrate judge. (Docs. 2, 4.)

On September 10, 2010, Defendant Chad Gilbert entered into a Rule 11 Plea Agreement ("plea agreement") with the government (Doc. 8) and on September 29, 2010, Defendant Theresa

Gilbert entered into a plea agreement with the government. (Doc. 17.) Chad Gilbert pleaded guilty to the sole count in the Information on September 10, 2010, and Theresa Gilbert pleaded guilty to the sole count in the Information on September 29, 2010. At these times, the plea agreements were taken under advisement and the cases were referred for pre-sentence reports.

After review of the pre-sentence reports, this Court entered an order that cancelled the scheduled sentencing hearings and directed briefing by the parties. (Doc. 21.) The order noted that "questions have arisen as to whether the statute cited in the Information, 18 U.S.C. § 641, properly applies to the offense conduct." (*Id.*) A second order issued January 14, 2011, clarifying the Court's continuing obligation to determine whether a factual basis exists for a guilty plea until judgment is entered and setting a briefing schedule on the issue of whether the conduct in this case of "[s]elling the collateral without the consent of the U.S. Department of Agriculture" (Doc. 1 at 1) constitutes embezzlement or conversion of a "thing of value of the United States" in violation of section 641 and whether "[u]sing the proceeds of the sale for purposes other than to pay their indebtedness to the United States" (Doc. 1 at 1) constitutes embezzlement or conversion of "money or a thing of value of the United States" in violation of section 641. (Doc. 27 at 6.) The parties submitted briefs (Docs. 31, 32, 33) and these issues are ready for resolution.

II.     **ANALYSIS**

    **A.     The Court's Continuing Obligation to Determine Whether a Factual Basis Exists for a Guilty Plea Until Such Time as Judgment is Entered**

Rule 11 of the Federal Rules of Criminal Procedure provides that, "[b]efore entering judgment on a guilty plea, the court must determine that there is a factual basis for the plea." Fed. R. Crim. P. 11(b)(3). The court "should make the factual basis determination '[b]efore *entering judgment on a guilty plea*' – not, as in other subsections of Rule 11, 'before *accepting* a plea.'"

2

*United States v. Mobley*, 618 F.3d 539, 545 (6th Cir. 2010) (emphasis in original; citations omitted). Therefore, even though guilty pleas have been accepted, the court's obligations "continue until it has entered judgment." *United States v. Smith*, 160 F.3d 117, 121 (2d Cir. 1998). The court "must assure itself simply that the conduct to which the defendant admits is in fact an offense under the statutory provision under which he is pleading guilty." *Id.* (citations omitted). "If [the court] decides there was no factual basis for a guilty plea after accepting it, the court should vacate the plea and enter a plea of not guilty on behalf of the defendant." *Id.*

### B. 18 U.S.C. § 641 - Embezzlement & Theft of Public Money or Property

The statute under which Defendants are charged[1] provides in pertinent part as follows:

> Whoever embezzles, steals, purloins, or knowingly converts to his use or the use of another, or without authority, sells, conveys or disposes of any . . . money, or thing of value of the United States or of any department or agency thereof, . . .
>
> Shall be fined under this title or imprisoned not more than ten years, or both; but if the value of such property in the aggregate, combining amounts from all the counts for which the defendant is convicted in a single case, does not exceed the sum of $1,000, he shall be fined under this title or imprisoned not more than one years, or both.

18 U.S.C. § 641. The elements of this offense are: "(1) that the money or property belonged to the government"; (2) "that the defendant fraudulently appropriated the money or property to his own use or the use of others"; and (3) "that the defendant did so knowingly and willfully with an intent to either temporarily or permanently deprive the owner of the use of the money or property." *United States v. McRee*, 7 F.3d 976, 980 (11th Cir. 1993).

Section 641 codified the common law crimes of larceny and embezzlement and requires the same elements as its common law predecessors. *Morrisette v. United States*, 342 U.S. 266, n.28,

---

[1] Defendants are also charged under 18 U.S.C. § 2, which provides that aiders and abettors will be punished as principals. This order will focus on the substantive statute charged.

72 S. Ct. 240, 96 L. Ed. 288 (1952); *United States v. Donato-Morales*, 382 F.3d 42, 47 (1st Cir. 2004). Embezzlement is the fraudulent conversion of the property of another by one who is already in possession of it. *In re Sherman*, 603 F.3d 11, 13 (1st Cir. 2010). Larceny is the trespassory taking and carrying away of the personal property of another with the intent to steal it. *United States v. Peterson*, 394 F.3d 98, 106 (2d Cir. 2005). Thus, the specific intent to deprive the United States of the use or enjoyment of money or property owned by the United States remains an element of the offenses charged under this section. *Donato-Morales,* 382 F.3d at 47.

    **C.**    **Whether the Conduct to which Defendants Admit Constitutes an Offense Under 18 U.S.C. § 641**

In the instant case, Defendants received a loan from the U.S. Department of Agriculture (hereafter "USDA") and the "loan was secured by collateral, primarily cattle, pledged to the United States."[2] (Plea Agreements, Doc. 8 at 2 (Chad); Doc. 17 at 2 (Theresa as an aider and abettor)). The Information specifically states that Defendants "gave the United States a security interest in collateral." (Doc. 1 at 1.) Defendants then allegedly "sold the collateral, knowing that [they] did not have permission from the government to do so," and failed to "us[e] the money to pay their financial obligation to the government." (Doc. 8 at 2; Doc 17 at 2.)

The question before the Court is whether the conduct of selling collateral in which the government possesses a security interest and failing to use the proceeds of the sale to pay off the debt owed to the government constitutes embezzlement or conversion of government property or

---

[2]There is no allegation that Defendants were not qualified to obtain the loan money or that they wrongfully, fraudulently or by any false representations obtained the loan money. Therefore, the body of case law finding violations of section 641 where false or fraudulent conduct was used to obtain the loan, funds, or other assets from the government is distinguishable. *See United States v. Dowl*, 619 F.3d 494, 501 (5th Cir. 2010) (section 641 violated where defendant submitted fraudulent application to obtain government funds); *United States v. Herrera-Martinez*, 525 F.3d 60 (1st Cir. 2008) (section 641 violated where defendant used false social security numbers to obtain social security funds); *United States v. King*, 506 F.3d 532 (7th Cir. 2007) (section 641 violated where defendant used stolen social security numbers to obtain Hurricane Katrina relief funds, student loan and Pell grant money); *United States v. Moreland*, 253 Fed. App'x 412 (5th Cir. 2007) (section 641 violated where defendant made a false statement on a loan application to the Farmers Home Administration).

funds. Several courts have found that possession of a security interest in property does not equate to ownership, and thus have concluded that section 641 does not apply in a factual setting such as this case. In *United States v. Tana*, 618 F. Supp. 1393 (S.D.N.Y. 1985), the defendant was charged under section 641 with converting equipment and other assets in which the United States government had a security interest. The court held that the indictment failed to allege conduct in violation of section 641, reasoning as follows:

> The Government contends that its security interest is "a thing of value" and that the removal of the property converted its interests. . . . The Government asserts that a security interest is an intangible property interest, the theft of which is subject to the same proscription. This is plainly wrong.
>
> A security interest is an inchoate interest in property; the property may be tangible or intangible. Cases dealing with the distinction between tangibles and intangibles do not bear on the issue of whether a security interest in property, whether tangible or intangible, constitutes a "thing of value" within the meaning of section 641.

*Tana*, 618 F. Supp. at 1395-96. The Seventh Circuit expressed its agreement with *Tana* in a 1994 published case. *United States v. Howard*, 30 F.3d 871, 876 (7th Cir. 1994) ("The rationale used in the *Tana* case is convincing. Consistent with that reasoning we refuse to expand section 641 to include the conversion of property in which the government has a mere security interest.").

In the instant case, the government strenuously argues that there is no support for the holdings of *Tana* and *Howard* in the Sixth Circuit, and couples that argument with an assertion that the Sixth Circuit "broadly" interprets section 641. (Gov't's Resp., Doc. 33 at 3.) In support, the government cites two Sixth Circuit cases, *United States v. Foulks*, 905 F.2d 928, 930 (6th Cir. 1990); and *United States v. Haranda*, 162 Fed. App'x 485 (6th Cir. 2006) (per curiam opinion affirming *United States v. Haranda*, 333 F. Supp. 2d 618 (E.D. Mich. 2004)), for the proposition that governmental supervision and control over the disposition of money or property, or a

5

reversionary interest therein, rather than ownership or title, is required for a violation of section 641.[3]

The Sixth Circuit has, however, clearly held in a published case that section 641 is to be narrowly construed and that federal *ownership*, not merely a lesser federal *interest*, is required for prosecution under section 641. In *United States v. Klingler*, 61 F.3d 1234 (6th Cir. 1995), a case arising from this district and cited by counsel for Defendant Theresa Gilbert, the Sixth Circuit reversed the district court's denial of the defendant's motion to dismiss the indictment brought pursuant to 18 U.S.C. §§ 641 and 649, stating:

> Although Congress might be able to extend federal jurisdiction solely on the basis of a "federal interest" in stolen property, . . . it did not choose to do so through these statutes. Moreover, the language of the statutes does not criminalize the embezzlement or conversion of funds or property that the federal government merely has an interest in or pervasively regulates, but rather "money or a thing of value of the United States." Furthermore, the use of the possessive phrasing "*of the United States*" confirms that federal *ownership* of stolen property is a jurisdictional imperative.

*Id.* at 1239-40 (emphasis in original). The Sixth Circuit went on to explain that "[t]he district court erred in asserting that 'the key factor . . . [in determining] whether the government has a sufficient interest in certain funds or items is the degree of its control over and interest in the 'thing of value' at issue,' . . . because it ignores the plain language of the statute and the rule of narrow construction for penal statutes." *Id.* at 1239.

---

[3]In *Foulks*, the defendant managed an emergency food and shelter program for the Salvation Army that was funded by the Federal Emergency Management Agency ("FEMA"). *Foulks*, 905 F.2d at 929. On appeal, the defendant argued that his conviction for embezzlement under section 641 should be set aside because the funds, once deposited in the Salvation Army account, lost their federal status. The Sixth Circuit disagreed, noting that "the Salvation Army was required to report back to the federal agency, and any unused funds or misused funds were to be returned to the federal agency." *Id.* at 930. The court held that "[w]here the government retains power over grant funds, those funds retain their federal character even though deposited into accounts of non-federal agencies." *Id.*

In *Haranda*, the court held that "the United States retains a property interest in a government-issued check and the funds in the treasury it represents until the check is negotiated. It stands to reason, therefore, that if a government check is negotiated by a person who does not have a right to the funds, a violation of section 641 may result, provided the person acts with criminal intent." *Haranda,* 333 F. Supp. 2d at 623.

The defendant in *Klingler* was a licensed customs broker who was indicted under 18 U.S.C. §§ 641 and 649. The defendant brought a motion to dismiss the indictment for lack of federal jurisdiction, arguing that the money she owed to the United States in customs fees, taxes, and duties, but used instead for personal expenses, belonged to her clients, not the United States, and therefore could not be considered "money or a thing of value of the United States" for purposes of section 641. *Id*. at 1236. She argued that her relationship with the government was merely a "debtor/creditor" relationship, which precluded the application of section 641. In reversing Klingler's conviction, the Sixth Circuit noted that although Supreme Court authority interpreting section 641 is "sparse and old," in two cases on record the Court reversed the defendants' convictions on the basis that the defendants were merely debtors, not trustees or bailees of government funds. *Id*. at 1237-38 (citing *United States v. Mason*, 218 U.S. 517, 31 S. Ct. 28, 54 L. Ed. 1133 (1910); and *United States v. Johnston*, 268 U.S. 220, 45 S. Ct. 496, 69 L. Ed. 925 (1925)).

Moreover, the *Klingler* court specifically cited the holding of the *Tana* case, and noted that the district court had erred in not applying its holding:

> The district court rejected Klingler's citations to . . . *United States v. Tana*, 618 F. Supp. 1393 (S.D.N.Y.1985), for the proposition that a security interest in property was not property of the United States. The district court correctly noted that the *Tana* court addressed several factors in determining jurisdiction, including the degree of federal control over the property. However, **the district court ignored the *Tana* court's conclusion that the property was not owned by the government, a finding that was dispositive**[.]

*Id.* at 1239 n.5 (emphasis added).

Applying *Tana, Howard,* and *Klingler* to the facts of this case, the Court concludes that the conduct to which both Defendants admitted during their plea hearings does not constitute a violation of 18 U.S.C. § 641 because the property sold was owned by Defendants, and not by the

7

government, as required under the first element of section 641. The government had a security interest in the property, as the Information clearly sets forth (Doc. 1 at 1 (Defendants "gave the United States a security interest in collateral")),[4] and was in a creditor/debtor relationship with Defendants. However, "the language of the statutes does not criminalize the embezzlement or conversion of funds or property that the federal government merely has an interest in . . . ." *Klingler*, 61 F.3d at 1239. "[F]ederal *ownership*" is a "jurisdictional imperative." *Id.* at 1240 (emphasis in original).

The Court further finds that after the collateral was sold, the use of the proceeds for the debtors' own purposes rather than to satisfy their debt to the government cannot be considered conversion of government property because the government did not have an *ownership* interest in the proceeds of the sale of Defendants' own property. *See Klingler*, 61 F.3d at 1240 ("an intention that money be delivered to the United States is insufficient to make it government property"). This finding is further supported by the Sixth Circuit's statement that a "conclusion common to these cases [applying *Klingler*] was that private funds converted to personal use by private individuals are not government property even though intended to be paid to the government." *United States v. Caseslorente*, 220 F.3d 727, 732 (6th Cir. 2000) (distinguishing facts of that case involving a government employee who stole recyclables that belonged to the government). The instant case follows that common thread; the fact that the privately-owned proceeds from the sale of privately-owned property (in this case cattle pledged as collateral) should have been paid to the government does not convert the proceeds of the sale of that collateral into government property.

---

[4] I note that if in fact the government owned the collateral, there would have been no need for a security interest in the first place.

The cases cited by the government, *Foulks* and *Haranda*, *supra*, do not alter these conclusions. In *Foulks*, which pre-dated *Klingler*, the question was whether the government retains ownership of grant funds distributed to non-federal agencies and the holding was clearly limited to cases alleging embezzlement of federal grant money under section 641. In *Haranda*, the holding was based upon the fact that the government retains an ownership interest in a check drawn against one of its accounts and therefore someone who has no right to negotiate such a check embezzles from the government when they do so. Neither of these cases, therefore, refute the proposition clearly stated in *Klingler* that government ownership is dispositive when it comes to a prosecution under section 641; to the contrary, they support it.

In its brief, the government also asserts that this Court's inquiry into the factual basis for the pleas "ignor[es] the well-established legal concept" that "'[t]here are many acts which are made criminal by two or more sections of the Code, and if the government chooses to prosecute the actor under the section providing the harsher penalty, he cannot complain.'" (Doc. 33 at 4 (citations omitted).) This "concept" has no application here, however, because the issue here is not whether the prosecutor had the freedom to choose between two or more criminal statutes, but whether the offense conduct to which both Defendants admitted meets the elements of the criminal statute the prosecutor did choose. As the Seventh Circuit found in *Howard, supra,* "[w]e have no doubt that [the defendant's] conduct was criminal under several other provisions of the United States Code. Even so, we must reverse [the defendant's] conviction because the criminal conduct prohibited by section 641 is not the type of conduct that he engaged in." *Howard*, 30 F.3d at 876. The same holds true here.

Finally, the Court notes that interpreting section 641 to cover the offense conduct in this case would render superfluous 18 U.S.C. § 658, which prohibits the disposal or conversion of

9

property mortgaged or pledged to farm credit agencies. The *Tana* court reached the same conclusion:

> [T]he legislative history of section 641 and of other sections of the federal criminal code indicates that Congress did not intend section 641 to apply to the theft or conversion of property in which the government merely holds a general security interest. The present section 641 originated in 1875 as chapter 144 of volume 18 of the United States Statutes at Large. We have found no instance during the 110 years since this section's adoption in which someone has been indicted under this statute for converting property in such circumstances. In 1933, Congress included in the Farm Credit Act provisions making actionable embezzlement or conversion of "property mortgaged or pledged to farm credit agencies," 18 U.S.C. § 658 (1982). In 1948, Congress extended these provisions to cover all federal employees. Had Congress intended or understood section 641 to apply to pledged assets, the enactment of these provisions would have been unnecessary.

*Tana*, 618 F. Supp. at 1396-97). This history is consistent with the extensive independent research undertaken by this judicial officer. Since the enactment of 18 U.S.C. § 641, the USDA has extended hundreds of thousands, if not millions, of farm loans, yet research has revealed not a single reported case in which the alleged conversion of assets pledged for payment of a USDA loan has successfully been prosecuted as embezzlement or conversion under section 641.

Accordingly, I conclude there is no factual basis for Defendants' pleas to a violation of section 641. Therefore, the pleas must be vacated and pleas of not guilty entered on behalf of Defendants. *See Smith, supra.*

### III.   ORDER

For all the reasons stated above, **IT IS ORDERED** that the guilty pleas of both Defendants are **VACATED** and pleas of not guilty are entered on their behalf.

## IV.     REVIEW

Review of this order is governed by Rule 58(g)(2) of the Federal Rules of Criminal Procedure.

                                                  s/ *Charles E. Binder*
                                                  CHARLES E. BINDER
Dated: February 14, 2011                    United States Magistrate Judge

## CERTIFICATION

I hereby certify that this Order was electronically filed this date, electronically served on Janet Parker, Robert Dunn and Eric Proschek, and served on Pretrial Services and District Judge Ludington in the traditional manner.

Date: February 14, 2011                By    s/*Jean L. Broucek*
                                                       Case Manager to Magistrate Judge Binder